Bruce Fein (D.C. Bar #446615)
W. Bruce DelValle (FL Bar 779962; *pro hac vice* pending)
FEIN & DELVALLE PLLC
300 New Jersey Avenue, N.W., Suite 900
Washington, D.C. 20001
Telephone: (202) 465-8728
Facsimile: (202) 347-0130
*bruce@feinpoints.com*
*brucedelvalle@gmail.com*
Attorneys for Plaintiffs

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **John Doe 1**<br>300 New Jersey Ave. NW<br>Suite 900<br>Washington, D.C. 20001; | |
| **John Doe 2**<br>300 New Jersey Ave. NW<br>Suite 900<br>Washington, D.C. 20001; | Honorable Judge: _____<br><br>Civil Action No. _____ |
| **Jane Doe 3**<br>300 New Jersey Ave. NW<br>Suite 900<br>Washington, D.C. 20001; | **JURY TRIAL DEMANDED** |
| **John Doe 4**<br>300 New Jersey Ave. NW<br>Suite 900<br>Washington, D.C. 20001; | |
| **John Doe 5**<br>300 New Jersey Ave. NW<br>Suite 900<br>Washington, D.C. 20001; | |
| **Jane Doe 6**<br>300 New Jersey Ave. NW<br>Suite 900<br>Washington, D.C. 20001; | |

**Jane Doe 7**
300 New Jersey Ave. NW
Suite 900
Washington, D.C. 20001;

**Jane Doe 8**
300 New Jersey Ave. NW
Suite 900
Washington, D.C. 20001;

**Jane Doe 9**
300 New Jersey Ave. NW
Suite 900
Washington, D.C. 20001; and,

**John Doe 10**
300 New Jersey Ave. NW
Suite 900
Washington, D.C. 20001,

       Plaintiffs,

v.

**Tukur Yusuf Buratai; Lawal Musa Daura; Ibrahim Attahiru; M.I. Ibrahim; Kasim Umar Sidi; Issah Maigari Abdullahi; Solomon Arase; Ibrahim Kpotun Idris; Okezie Ikpeazu; Willie Obiano; Habila Hosea**; **Peter Nwagbara; James Oshim Nwafor**; **Hosea Karma; Bassey Abang** and **Johnson Babatunde Kokomo**,

       Defendants.

## COMPLAINT

    **NOW COMES** Plaintiffs John Doe 1, John Doe 2, Jane Doe 3, John Doe 4, John Doe 5,

Jane Doe 6, Jane Doe 7, Jane Doe 8, Jane Doe 9, and John Doe 10, through their undersigned

counsel, and hereby file this Complaint against Defendants: Tukur Yusuf Buratai, Lawal Musa

Daura, Ibrahim Attahiru, Kasim Umar Sidi, Issah Maigari Abdullahi, Solomon Arase, Ibrahim

Kpotun Idris, Okezie Ikpeazu, Habila Hosea, Peter Nwagbara, Willie Obiano, Hosea Karma, M.I. Ibrahim, Ibrahim Attahiru, Bassey Abang, and Johnson Babatunde Kokomo, individually, stating claims arising from killings or torture perpetrated by these Defendants and others under  color of Nigerian law. These claims arise under the Alien Tort Claims Act, and Torture Victims Protection Act of 1991, Pub. L. 102-256, 106 Stat. 73 (March 12, 1992) ("TVPA") and 28 U.S.C. § 1350. Plaintiffs allege as follows:

**SUBJECT MATTER JURISDICTION**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 because Plaintiffs' claims arise under the Alien Torts Claim Act and Torture Victims Protection Act of 1991, Pub. L. 102-256, 106 Stat. 73 (March 12, 1992) ("TVPA") and 28 U.S.C. § 1350. Seeking a remedy for the extrajudicial torture and killing of Plaintiffs or their Decedents in Nigeria would be futile because the Nigerian judicial system has been politically compromised by Defendants and their political agents against pro-Biafran IPOB/Igbo claimants, such that Defendants will not and have not been brought to justice. In light of these circumstances, there are no adequate and available remedies for these Plaintiffs to exhaust in Nigeria.

**PERSONAL JURISDICTION AND VENUE**

1.      This Court has personal jurisdiction over Defendants and venue is proper under 28 U.S.C. 1391 (b) (3) because Defendants perpetrated crimes against humanity that establish universal jurisdiction over Plaintiffs' claims of extrajudicial killings or torture under color of Nigerian law involving exclusively Nigerian Plaintiffs and Nigerian Defendants.

**PARTIES**

2.      Plaintiff John Doe 1 (DOE 1) is the legal representative of DECEDENT 1, the victim of an extrajudicial killing perpetrated under color of Nigerian law by Defendants.

3.      Plaintiff John Doe 2 (DOE 2) is the legal representative of DECEDENT 2, the victim of an extrajudicial killing perpetrated under color of Nigerian law by Defendants.

4.      Plaintiff Jane Doe 3 (DOE 3) is the legal representative of DECEDENT 3, the victim of an extrajudicial killing perpetrated by Defendants under color of Nigerian law.

5.      Plaintiff John Doe 4 (DOE 4) is the legal representative of DECEDENT 4, the victim of an extrajudicial killing under color of Nigerian law perpetrated by Defendants.

6.      Plaintiff John Doe 5 (DOE 5) is the legal representative of DECEDENT 5, the victim of an extrajudicial killing under color of Nigerian law perpetrated by Defendants.

7.      Plaintiff Jane Doe 6 (DOE 6) is the legal representative of her younger brother, DECEDENT 6, who was the victim of an extrajudicial killing under color of Nigerian law perpetrated by Defendants.

8.      Plaintiff Jane Doe 7 (DOE 7) is the legal representative of her deceased husband, DECEDENT 7, the victim of an extrajudicial killing under color of Nigerian law by Defendants.

9.      Plaintiff Jane Doe 8 (DOE 8) is the legal representative of DECEDENT 8, who was a victim of an extrajudicial killing under color of Nigerian law perpetrated by Defendants.

10.     Plaintiff Jane Doe 9 (DOE 9), is the legal representative of DECEDENT 9, the victim of an extrajudicial killing by Defendants under color of Nigerian law.

11.     Plaintiff John Doe 10 is *sui generis* and is a victim of torture under color of Nigerian law by Nigerian soldiers and sailors, police personnel, the SSS, and by the Special Anti-Robbery Squad (SARS), a roving, murderous militia operating at the behest, direction and under the control of the Defendants.

12.     Defendant Lt. General Tukur Yusuf Buratai ("LT. GENERAL BURATAI") is the 26th Chief of Staff of the Nigerian Army, appointed to the position by President Muhammadu Buhari

on July 13, 2015. At all times relevant to this Complaint, LT. GENERAL BURATAI exercised effective command and operational control of all military and state police in Nigeria and was directly and proximately responsible for the tortious acts complained of herein.

13.     LT. GENERAL BURATAI is a Muslim from Northern Nigeria of Hausa-Fulani ethnicity with a professed genocidal hatred of the IPOB and the Igbo peoples who are the ethnic majority in Abia State (95% of the population) and in Anambra State (98% of the population).

14.     Defendant Lawal Musa Daura ("DAURA") is the Director General of the Nigerian State Security Service ("SSS"), appointed to the position by President Muhammadu Buhari on July 2, 2015. The Nigerian SSS is roughly the equivalent of the Federal Bureau of Investigation (FBI) in the United States of America, save for the fact that the SSS regular engages in genocidal killings of Biafrans and other police and paramilitary actions against the Indigenous People of Biafra (IPOB) and the Biafran people. At all times relevant to this Complaint, DAURA exercised effective command and operational control of all SSS personnel in Nigeria and was directly and proximately responsible for the tortious acts complained of herein.

15.     DAURA is a Muslim from Northern Nigeria of Hausa-Fulani ethnicity with a professed genocidal hatred of the IPOB and the Igbo peoples who are the ethnic majority in Abia State (95% of the population) and in Anambra State (98% of the population).

16.     Defendant Major General Ibrahim Attahiru (MAJ. GENERAL ATTAHIRU), at all times relevant to this Complaint, was General Officer Commanding the 82nd Division of the Nigerian Army in Enugu, Southeast Nigeria.  MAJ. GENERAL ATTAHIRU exercised command authority and control over the perpetrators of the May 29, 2016 - May 30, 2016, massacre and torture of Biafran supporters in Nkpor, Onitsha, and Asaba, the February 9, 2016, massacres and tortures in Aba at the National High School, and the extra-territorial tortures and murders in Abia State on or

about January 18, 2016, each during a peaceful demonstration of IPOB/Biafran unity, including the extrajudicial killings of the DECEDENTS 1 – 9 represented herein and the torture of Plaintiff DOE 10.

17.     MAJ. GENERAL ATTAHIRU knew or had reason to know of the massacre and torture and did nothing to stop the crimes against humanity, and, knows or has reason to know of the culprits, and has done nothing to bring them to justice.

18.     MAJ. GENERAL ATTAHIRU is a Muslim from Northern Nigeria of Hausa-Fulani ethnicity with a professed genocidal hatred of the IPOB and the Igbo peoples who are the ethnic majority in Abia State (95% of the population) and in Anambra State (98% of the population).

19.     Defendant M.I. Ibrahim (MAJ. IBRAHIM), at all times relevant to this Complaint, was in command of the Nigeria Military Police in Onitsha and Abia State and was directly and proximately responsible for the tortious and murderous acts complained of herein. Specifically, MAJ. IBRAHIM was among the primary leaders and planners of the Nigerian military's involvement and coordination with other Nigerian governmental forces in the May 29, 2016 - May 30, 2016, in the extraterritorial massacre and torture of Biafran supporters in Nkpor, Onitsha, and Asaba during a peaceful demonstration of IPOB/Biafran unity, including the extrajudicial killings of the DECEDENTS 1 – 9 represented herein and the torture of Plaintiff DOE 10.

20.      Defendant MAJ. IBRAHIM was the leader of the military contingent that killed and tortured scores of IPOB members, Igbos and Biafrans and their supporters on May 29 – 30, 2016, in Nkpor, Onitsha, and Asaba.

21.     MAJ. IBRAHIM is a Muslim from Northern Nigeria of Hausa-Fulani ethnicity with a professed genocidal hatred of the IPOB and the Igbo peoples who are the ethnic majority in Abia State (95% of the population) and in Anambra State (98% of the population).

22.      Defendant Lt. Col. Kasim Umar Sidi ("COLONEL SIDI"), was at all times relevant to this Complaint, the Commander of the 144th Battalion of the Nigerian Army, located at Asa in Ukwa West LGA of Abia State who exercised command authority and control over the perpetrators of the February 9, 2016, massacres and tortures in Aba at the National High School, and the extra-territorial tortures and murders in Abia State on or about January 18, 2016, each during a peaceful demonstration of IPOB/Biafran unity, including the extrajudicial killings and torture of Decedents: DECEDENT 6, DECEDENT 7, DECEDENT 8, and DECEDENT 9 represented herein. COLONEL SIDI knew or had reason to know of these massacres, killings and acts of torture and did nothing to stop these crimes against humanity, and, knows or has reason to know of the culprits, and has done nothing to bring any of them to justice.

23.      Like Defendants LT. GENERAL BURATAI, MAJ. GENERAL ATTAHIRU and DAURA, COLONEL SIDI is a Muslim from Northern Nigeria of Hausa-Fulani ethnicity with a professed genocidal hatred of the IPOB and the Igbo peoples who are the ethnic majority in Abia State (95% of the population). Upon information and belief, COLONEL SIDI was stationed in the South and Southeast at the direction of and upon orders from LT. GENERAL BURATAI and President Muhammadu Buhari, also Hausa-Fulani from Northern Nigeria, to ethnically cleanse and commit acts of genocide against the Igbo people and eradicate those who support the Biafran cause.

24.      At all times relevant to this Complaint, COLONEL SIDI exercised effective command and operational control of the military and state police in Abia State and was directly and proximately responsible for the tortious acts complained of herein.

25.     Defendant Col. Issah Maigari Abdullahi ("COLONEL ABDULLAHI") the Commanding Officer of the Onitsha Military Cantonment, Anambra State, Nigeria, the situs of some of the extra-judicial massacres that are the subject of this litigation.

26.     COLONEL ABDULLAHI, like Defendants LT. GENERAL BURATAI, MAJ. GENERAL COLONEL SIDI and DAURA, is also a Muslim of Hausa-Fulani ethnicity from Northern Nigeria. Upon information and belief, COLONEL ABDULLAHI shares their professed genocidal hatred of the IPOB and the Igbo peoples who are the ethnic majority in Anambra State (98% of the population).

27.     Upon information and belief, COLONEL ABDULLAHI was stationed in the South and Southeast of Nigeria at the direction of and upon orders from LT. GENERAL BURATAI and President Muhammadu Buhari, also Hausa-Fulani from Northern Nigeria, to ethnically cleanse and commit acts of genocide against the IPOB and the Igbo people and eradicate those who support the IPOB/Biafran cause.

28.     Defendant COLONEL ABDULLAHI was at all times relevant to this Complaint the Commander of the 302 Artillery Regime of the Nigerian Army in Onitsha who exercised command authority and control over the perpetrators of the May 29, 2016 - May 30, 2016, during a peaceful demonstration of IPOB/Biafran unity, including the extrajudicial killings of the DECEDENTS 1 – 9 represented herein and the torture of Plaintiff DOE 10.

29.     COLONEL ABDULLAHI knew or had reason to know of these massacres, killings and acts of torture and did nothing to stop these crimes against humanity, and, knows or has reason to know of the culprits, and has done nothing to bring any of them to justice.

30.     At all times relevant to this Complaint, COLONEL ABDULLAHI exercised effective command and operational control of the military forces in Anambra and in Abia State and was directly and proximately responsible for the tortious acts complained of herein.

31.     Defendant Solomon Arase ("ARASE") was the Inspector General of Nigerian Police and a member of the Nigerian Police force prior to his June 21, 2016, retirement. On December 2, 2015 issued a publicly televised and widely distributed warning to the Igbo people of Southern and Southeastern Nigeria and directed his subordinate officers in the Southeast and the South zones to apply "maximum (e.g. deadly) force" against the IPOB, the Igbo people and Biafran sympathizers.

32.     At all times relevant to this Complaint, ARASE exercised effective command and operational control of the entire Nigerian Police force and of SARS and was directly and proximately responsible for the tortious acts complained of herein.

33.     Defendant Ibrahim Kpotun Idris ("IDRIS") is the current Nigerian Inspector General of Police. He was appointed to this position by President Mohammadu Buhari on March 21 2016, replacing Defendant ARASE, who retired from the police force on June 21, 2016.  Relevant to this Complaint, following the demotion and retirement of ARASE, IDRIS exercised effective command and operational control of the Nigerian Police and SARS and was directly and proximately responsible for the failure to prevent or to investigate and prosecute the tortious acts complained of herein. IDRIS knew or should have known of these tortious acts and is complicit in their concealment to the harm of Plaintiffs hereunder.

34.     IDRIS is likewise a Muslim from Northern Nigeria of Hausa-Fulani ethnicity with a professed genocidal hatred of the IPOB and the Igbo peoples who are the ethnic majority in Abia State (95% of the population) and in Anambra State (98% of the population).

35.     Defendant Okezie Victor Ikpeazu ("IKPEAZU") is the ninth Governor of Abia State, the locale of some of the extra-judicial killings at issue in this case. He took office on May 29, 2015. At all times relevant to this Complaint, IKPEAZU exercised effective command and operational control of the Nigerian Police Command for Abia State as the Chief Security Officer, and was directly and proximately responsible for the tortious acts complained of herein, specifically, the February 9, 2016, massacre in Aba at the National High School, and the extra-territorial torture and murders of January 18, 2016.

36.     Defendant Willie Obiano ("OBIANO") is the fourth Governor of Anambra State, the locale of some of the extra-judicial killings at issue in this case. He took office on March 17, 2014.  At all times relevant to this Complaint, OBIANO exercised effective command and operational control of the Nigerian Police Command for Anambra State as the Chief Security Officer, and was directly and proximately responsible for the tortious acts complained of herein, specifically, the May 29, 2016 - May 30, 2016, massacre and torture of IPOB and Biafran supporters.

37.     Defendant Habila Hosea ("HOSEA") was the Commissioner of the Nigerian Police Command for Abia State. HOSEA is now the Deputy Inspector General of the Nigerian Police Command at the Force Headquarters in Abuja. At all times relevant to this Complaint, HOSEA exercised effective command and operational control of the Abia State Police Command and SARS as Commissioner and was directly and proximately responsible for the tortious acts complained of herein and for the failure to investigate or prosecute the wrongdoers, specifically, the February 9, 2016, massacre in Aba at the National High School, and the extra-territorial torture and murder of DECEDENT 9 in Abia State on or about January 18, 2016.

38.     Defendant Peter Nwagbara ("NWAGBARA") was the Assistant Commissioner of the Nigerian Police Command and Abia Area Commander for Abia State. At all times relevant to this

Complaint, NWAGBARA exercised effective command and operational control of the Abia Area Command of the State Police Command and SARS as Aba Area Commander and was directly and proximately responsible for the tortious acts complained of herein, specifically, the February 9, 2016, massacres and tortures in Aba at the National High School, and the tortures and murders in Abia State on or about January 18, 2016, and for failure to investigate or prosecute the wrongdoers involved in these genocidal acts.

39.     Defendant James Oshim Nwafor ("NWAFOR") was the Chief Superintendent of Police (CSP) and Officer-in Charge of the Special Anti-Robbery Squad (SARS) of Anambra State Police Command, or OC/SARS. At all times relevant to this Complaint, NWAFOR exercised effective command and operational control of the Anambra State Police Command and SARS in Anambra State and was directly and proximately responsible for the tortious acts complained of herein and for failure to investigate or prosecute the wrongdoers.

40.     Defendant Hassan Karma ("KARMA") was the Commissioner of the Nigerian Police Command for Anambra State. At all times relevant to this Complaint, KARMA exercised effective command and operational control of the Anambra State Police Command and SARS as Commissioner and was directly and proximately responsible for the tortious acts complained of herein and for the failure to investigate or prosecute the wrongdoers.

41.     Defendant Bassey Abang (ABANG) was the Chief Superintendent of Police (CSP) and the officer in charge of SARS or OC/SARS during the 29th and 30th May 2016, Massacre in Anambra State. ABANG exercised effective command and operational control of the Anambra State Police Command and SARS was directly and proximately responsible for the tortuous acts complained of herein and for the failure to investigate or prosecute the wrongdoers despite knowing or having reason to know their identities.

42. Johnson Babatunde Kokomo, Deputy Commissioner of Police (KOKOMO), was the Deputy Commissioner of Police in charge of operations in Anambra State during the May 29, 2016 - May 30, 2016, Pro Biafra Heroes Day Massacre in Anambra State. KOKOMO exercised effective command and operational control over the Anambra State Police Command and SARS and was directly and proximately responsible for the tortious acts complained of herein and for the failure to investigate or prosecute the wrongdoers despite knowing or having reason to know their identities.

43. Each Defendant is an individual person amenable to suit hereunder.


## **GENERAL FACTS**

44. In 1960, Great Britain granted independence to its colonial possession, Nigeria. It handed power to Nigerian officials whom it believed would do its bidding financially or otherwise. No plebiscite was held within Nigeria to enable its ethnically and tribally varied peoples, including Igbos and Biafrans, to determine their political destinies. If a plebiscite had been held, Biafrans would have voted unanimously for independence within the historic territory of Biafra.

45. Biafrans, IPOB members and Igbos in general are predominantly Christian. Igbos are a numerical minority in Nigeria as a whole. They have been systematically oppressed and brutalized by the predominantly Muslim Hausa-Fulani, who dominate the military, for more than 50 years since Nigerian independence.

46. Biafrans and IPOB/Igbos have been chronically persecuted, massacred, and targeted for genocide in Nigeria.

47. The chilling extrajudicial killings and torture under color of Nigerian law that gave birth to this litigation constitute genocide.

48.     The right to peaceful assembly and association, as well as the right of freedom of expression, is protected under the Nigerian constitution, the Universal Declaration of Human Rights, and sister human rights conventions. Lethal military or police force to suppress freedom of assembly, speech, or association—except in self-defense or defense of others under attack—is legally inadmissible.

49.      Igbos, who were Biafran sympathizers and members of IPOB (Indigenous People of Biafra) alerted the Anambra State Police Commissioner's Office, Defendants KARMA and NWAFOR, and asked them for protection and security for their intended peaceful rally, parade, and remembrance for Biafran Patriots Day, May 30, 2016, in Onitsha, Anambra State.

50.     Based on the alert, a joint security operation was carried out by the Nigerian army, police, and navy from the night of May 29, 2016, through May 30, 2016, that involved the use of deadly force to prevent a peaceful march by Igbos, who were Biafran sympathizers and members of IPOB (Indigenous People of Biafra), from the Nkpor motor home park to a nearby field for a rally. Before the march began, the Nigerian military and police raided homes and a church where IPOB members were asleep.

51.     Hundreds of Igbos who had come from neighboring states to celebrate pro-Biafran political views and Igbo ethnicity on May 30, 2016, were asleep in the St. Edmunds Catholic church when soldiers and police force personnel or agents stormed its compound moments before midnight on May 29, 2016.

52.     The Nigerian Army and Police Force threw teargas into the compound and began shooting live ammunition indiscriminately at the IPOB members/Igbos inside, killing and injuring many as they slept.

53.     The following day, the Nigeria military and police returned to slaughter more ethnic Igbos, IPOB members and supporters of pro-Biafran political views. In some instances, the military and police shot young boys as they raised their hands to ask a question while standing by the roadside.

54.     Witnesses report that numerous bodies, including those of some Plaintiffs, were loaded into Nigerian Police Force vans and removed from the area, along with the wounded.

55.     None of the May 2016, Anambra Biafran Patriots Day celebrants were armed or used any force or threats of force or violence to provoke the genocidal slaughter that occurred May 29 – 30, 2016 in Onitsha, Anambra State.

56.     On or about February 9, 2016, a team of soldiers under the 144 Battalion located in Abia State, joined by personnel of the Abia State Police Force, Abia State Command, or personnel of the Nigerian Navy Command under the command, control, or supervision of several Defendants, shot and killed 22 unarmed innocents, and non-violent members of IPOB at the National High School along Port Harcourt Road in Aba, Abia State.

57.     The victims of these extra-judicial killings were persons gathered on February 9, 2016, for peaceful observances, prayers, and political protest with political leader of IPOB and the Biafran political views.

58.     On the morning of February 9, 2016, the IPOB/Igbo protesters gathered for Christian prayers at the IPOB/Igbo National High School on Port Harcourt Road. As soon as the prayers began, soldiers joined by personnel of the Abia State Police Force, Abia State Command, the SSS, SARS or personnel of the Nigerian Navy Command under the command, control, or supervision of stormed the high school campus, scaled the fences, and began to indiscriminately shoot the assemblage engaged in prayer and peaceful observation.

59.     The IPOB members/Igbos assembled at the National High School Campus in Abia State the morning of February 9, 2016, were murdered under the color of Nigerian law solely or substantially because of their ethnic origins, Igbo, and their political beliefs, e.g. supporters of IPOB and pro-Biafran political views and causes.

60.     Over thirty (30) other members of IPOB were shot and fatally or critically wounded at the scene.  Many more were arrested and tortured. A few days later, eleven (11) of the dead bodies were discovered in a refuse dump pit, their mutilated bodies battered and shrank with decimating chemical substances to avoid identification.  The IPOB/Igbos members were slaughtered because of their peaceful political protests against the crimes and cruelties of the Buhari administration.

61.     Defendants' plan to exterminate IPOB/Igbos ethnicity and political opposition to President Muhammadu Buhari, a former reviled military dictator, through the use of lethal force against unarmed civilians led to the torture of each Plaintiff and the deaths of the following Plaintiffs' Decedents:

> DECEDENT 1;
> DECEDENT 2;
> DECEDENT 3;
> DECEDENT 4;
> DECEDENT 5;
> DECEDENT 6;
> DECEDENT 7;
> DECEDENT 8; and
> DECEDENT 9.

(hereinafter "Decedents")

62.     Plaintiff DOE 10, although severely and brutally tortured, miraculously lived as the lone survivor amongst the victims herein.

63.     Defendants conspired and agreed that killings of Biafran civilians were necessary to quash political opposition to President Buhari and to terrorize the population.  Defendants, directed the

Armed Forces, the Police Command, SSS and militia force paramilitary troops to use lethal force against IPOB and ethnic Igbo citizens. They condoned the killings. None of Plaintiffs' DECEDENTS 1 – 9 or Plaintiff DOE 10 posed any real or apparent threat to persons or property that would have justified the use of deadly force against them.

64.   Each of the Decedents was tortured and then killed as intended in Defendants' plan of genocide against IPOB and the Igbo.

65.   Pursuant to that plan, each of the Decedents was intentionally and deliberately killed by a member of the Nigerian Armed Forces or Nigerian Police Command, acting under color of Nigerian law, and acting under the command of, in conspiracy with, and/or as the agent of one or more of the Defendants.

66.   None of the torture or killings were authorized by any court of law and each was unlawful under the laws of Nigeria and under international law. None of the Decedents was armed, and none was killed because he or she posed a real or apparent threat to people or property at the time of the killing.

67.   Each of the acts of torture against Plaintiff DOE 10 and the torture and killing of each Decedent in this litigation constituted a crime against humanity and, as regards each of the Decedents, an extrajudicial torture and/or killing actionable under the Alien Torts Claim Act and Torture Victims Protection Act.

68.   Each Plaintiff suffered severe emotional, physical, and mental pain and suffering at the hands of their torturers, including Defendants. Additionally, each of the Decedents suffered severe emotional, physical, and mental pain and suffering before his or her death. As a result, Plaintiffs are entitled to damages in an amount to be determined at trial and as pled below.

69.    The present practice whereby the IPOB/Igbo in the Southeast/Southern Zone, which includes Abia State and Anambra State are flooded with and dominated by genocidal and murderous soldiers, sailors, police force personnel and their agent security cadres, such as SARS, of core northern Muslim and/or Hausa-Fulani origin should be reversed. Commanding officers and soldiers posted in the Igbo Southeast/Southern Zone should come from those geopolitical zones and ethnicities that do not have an avowed hatred of the IPOB/Igbo peoples or Biafrans. The current the policy and custom of President Buhari's Administration is to post Muslim, Hausa-Fulani officers and soldiers and sailors in the Igbo Southeast-Southern zone.

70.    Each Plaintiff or their Decedent, correspondingly DECEDENTS 1-9, has been significantly injured and has suffered or continues to suffer extreme damages as a direct or proximate result of the acts or omissions of Defendants.

71.    Defendants' acts and omissions were deliberate, willful, intentional, wanton, malicious, and oppressive and should be punished by an award of punitive damages in an amount to be determined at trial. Due to the vileness of Defendants' conduct, Plaintiffs are entitled to punitive or exemplary damages.

72.    The foreign policy of the United States, as authoritatively established by Congress in the Alien Tort Claims Act and the Torture Victims Protection Act, among other things, is to deter and to sanction through private civil lawsuits for damages in the United States torture and extrajudicial killings—both crimes against humanity—perpetrated by any person under color of foreign law. The foreign policy of the United States envisions that defendants in TVPA actions will have acted under the aegis or support of foreign government authority in exercising command responsibilities.

73.    Each of the Defendants herein are sued in their individual capacities alone, and are also in non-policy but powerful positions of military, police and militia authority over the Plaintiffs and

each of the acts alleged in the Complaint to be filed herein comprise violations of universally agreed upon legal principles which violate the norms of customary international law, and thus are not deemed official for purposes of the act of state doctrine, and do not present a sensitive foreign policy issue, particularly since all such genocidal, murderous and depraved acts by Defendants, acting in their individual capacities, and those in their command or control alleged herein were committed in violation of the law of nations and treaties of the United States and are universally condemned as being odious to human rights and dignity as contemplated in 28 U.S.C.A. § 1350. In point of fact the clear policies of the United States to protect human rights abroad that is codified in the TVPA and 28 U.S.C.A. § 1350 are manifested and furthered by this action.

74.     Each of the acts alleged herein violated universally agreed upon legal principles which violated the norms of customary international law, and thus are not deemed official for purposes of the act of state doctrine, and do not present a sensitive foreign policy issue, particularly since all such genocidal, murderous and depraved acts by Defendants, acting in their individual capacities, and those in their command or control alleged herein were committed in violation of the law of nations and treaties of the United States and are universally condemned as being odious to human rights and dignity as contemplated in 28 U.S.C.A. § 1350. In point of fact the clear policies of the United States to protect human rights abroad that is codified in the TVPA and 28 U.S.C.A. § 1350 are manifested and furthered by this action.

75.     Seeking a remedy for the extrajudicial torture and killing of Plaintiffs or their Decedents in Nigeria would be futile because the Nigerian judicial system has been politically compromised by Defendants and their political agents against IPOB/Igbo claimants, such that Defendants will not and have not been brought to justice. In light of these circumstances, there are no adequate and available remedies for these Plaintiffs to exhaust in Nigeria.

76.     It is essential that each of the Plaintiffs and the Decedents are not named and remain anonymous in this proceeding because of the extreme mortal danger this lawsuit poses to each Plaintiff hereto if their identities are disclosed to the named Defendants herein and others in the Nigerian government.

77.     All conditions precedent to this action have occurred, performed or have been waived.

78.     Plaintiffs demand a trial by jury of all causes of action, claims and damages arising hereunder.

## COUNT I – TORTURE VICTIMS PROTECTION ACT OF 1991 VIOLATION AGAINST DEFENDANTS LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO: DOE 1

79.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 -78, above, as if fully set forth herein.

80.     Plaintiff DOE 1 is the legal representative of DECEDENT 1, the victim of an extrajudicial killing perpetrated under color of Nigerian law by an/or under the direction, control, or behest of Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO.

81.     During the late hours of May 29, 2016 or early hours of May 30, 2016, DECEDENT 1 was severely injured in an attack on the St. Edmunds Catholic Church along Umuoji Road at Nkpor in Anambra State by the Special Anti-Robbery Squad (SARS), a police unit notorious for torturing its victims with impunity, orchestrated, directed, and supervised by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO.

82.     As a direct and proximate result of his injuries suffered from the wounds inflicted by SARS at the hands of Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO, each and all acting under the color of Nigerian law, DECEDENT 1 died shortly thereafter in Aba, Abia State.

83.     The motivation of Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO for the extrajudicial killing of DECEDENT 1 under color of Nigerian law was DECEDENT 1's support for the Indigenous People of Biafra, Aba Division, and his plan to peacefully celebrate the Biafra/Igbo Heroes Day Anniversary near the St. Edmunds Catholic Church compound on May 30, 2016.

84.     Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents acting under their direction, control or behest murdered DECEDENT 1 in an extrajudicial killing under the color of Nigerian law, DECEDENT 1's death caused by mortal wounds received on May 29, 2016, in Anambra State, Nigeria at the hands of Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO, solely because of his ethnicity and political views.

85.     In the alternative, Plaintiff DOE 1 alleges that Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents acting under their direction, control or behest knew or had reason to know before the fact that SARS would

murder DECEDENT 1 under the color of Nigerian law solely or substantially because of DECEDENT 1's Igbo ethnicity, IPOB membership and pro-Biafran political views but did nothing to stop the extrajudicial killing.

86.     Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents acting under their direction, control or behest knew or had reason to know the identities of the SARS perpetrators of the extrajudicial killing of DECEDENT 1, and are complicit in doing nothing to punish the wrongdoers.

87.     Seeking a remedy for the extrajudicial killing of DECEDENT 1 in Nigeria would be futile because the Nigerian judicial system has been politically compromised by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and their political agents against IPOB/Igbo claimants, such that Defendants will not and have not been brought to justice.

88.     In fact, Plaintiff DOE 1 risks certain death by Defendants and those whom they command if a complaint is brought in Nigeria seeking a remedy for the murder, extrajudicial killing, and torture of DECEDENT 1.

89.     The extrajudicial killing of DECEDENT 1 under the color of Nigerian law by Defendants and other unknown agents acting under their direction, control or behest have violated the Alien Tort Claims Act and the Torture Victims Protection Act of 1991, Pub. L. 102-256, 106 Stat. 73 (March 12, 1992) ("TVPA") and 28 U.S.C. § 1350.

90.     The extra-judicial killing of DECEDENT 1 under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL

ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents acting under their direction, control, or behest, have directly or proximately caused cognizable damages to Plaintiff DOE 1 in an amount not less than FIVE MILLION DOLLARS(U.S.) ($5,000,000.00).

91.   The extra-judicial killing of DECEDENT 1 under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents, was a deliberate, willful, intentional, wanton, malicious, and oppressive act and should be punished by an award of punitive damages in an amount not less than FIFTEEN MILLION DOLLARS (U.S.) ($15,000,000.00), or as otherwise determined at trial.

92.   Plaintiff DOE 1 has engaged the undersigned counsel to prosecute this Torture Victims Protection Act claim on Plaintiff DOE 1's behalf and has agreed to pay them a reasonable attorneys' fee for which amounts Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO should be liable.

**COUNT II – TORTURE VICTIMS PROTECTION ACT OF 1991 VIOLATION AGAINST DEFENDANTS LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO: DOE 2**

93.   Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 - 78, above, as if fully set forth herein.

94.   Plaintiff DOE 2 is the legal representative of DECEDENT 2, the victim of an extrajudicial killing perpetrated under color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO.

95.     On or about May 29, 2016, DECEDENT 2 was shot and killed by SARS in its attack on the St. Edmunds Catholic Church at Nkpor in Anambra State because, among other things, DECEDENT 2 supported and planned to attend the Biafra/Igbo Heroes Day Anniversary celebration scheduled for May 30, 2016.

96.     Plaintiff DOE 2 identified the dead body of DECEDENT 2.

97.     DECEDENT 2 was repeatedly shot in the waist, shoulder, chest, and head regions, suffering fatal wounds.

98.     Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO, and other unknown agents, acting under their direction, control or behest murdered DECEDENT 2 in an extrajudicial killing under the color of Nigerian law on or about May 29, 2016, in Anambra State, Nigeria solely because of DECEDENT 2's ethnicity and political views.

99.     In the alternative, Plaintiff DOE 2 alleges that Defendants and other unknown agents acting under their direction, control or behest knew or had reason to know before the fact that SARS would murder DECEDENT 2 solely or substantially because of DECEDENT 2's Igbo ethnicity and pro-Biafran political views but did nothing to stop the extrajudicial killing.

100.    Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents acting under their direction, control or behest knew or had reason to know the identities of the SARS perpetrators of the extrajudicial killing of DECEDENT 2, are complicit in doing nothing to punish the wrongdoers.

101.    Seeking a remedy for the extrajudicial killing of DECEDENT 2 in Nigeria would be futile because the Nigerian judicial system has been politically compromised by Defendants and their political agents against IPOB/Igbo claimants, such that Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and others will not and have not been brought to justice.

102.    In fact, Plaintiff DOE 2 risks certain death by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and others, and those whom they command if a complaint is brought in Nigeria seeking a remedy for the murder, extrajudicial killing, and torture of DECEDENT 2.

103.    The extrajudicial killing of DECEDENT 2 under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents acting under their direction, control or behest have violated the Alien Tort Claims Act and Torture Victims Protection Act of 1991, Pub. L. 102-256, 106 Stat. 73 (March 12, 1992) ("TVPA") and 28 U.S.C. § 1350.

104.    The extra-judicial killing of DECEDENT 2 under the color of Nigerian law by Defendants and other unknown agents acting under their direction, control or behest have directly or proximately caused cognizable damages to Plaintiff DOE 2 in an amount not less than FIVE MILLION DOLLARS (U.S.) ($5,000,000.00).

105.    The extra-judicial killing of DECEDENT 2 under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL

ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents, was a deliberate, willful, intentional, wanton, malicious, and oppressive act and should be punished by an award of punitive damages in an amount not less than FIFTEEN MILLION DOLLARS (U.S.) ($15,000,000.00), or as otherwise determined at trial.

106.    Plaintiff DOE 2 has engaged the undersigned attorneys to prosecute this Torture Victims Protection Act claim on Plaintiff's behalf and has agreed to pay them a reasonable attorneys' fee for which amounts Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO should be liable.

### COUNT III – TORTURE VICTIMS PROTECTION ACT OF 1991 VIOLATION AGAINST LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO: DOE 3

107.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 - 78, above, as if fully set forth herein.

108.    Plaintiff DOE 3 is the legal representative of DECEDENT 3, the victim of an extrajudicial killing perpetrated by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO under color of Nigerian law.

109.    DECEDENT 3 was killed extrajudicially by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO under color of Nigerian law.

110.    DECEDENT 3 was shot and killed by Nigerian soldiers, joined by personnel of the Anambra State Police Force, Anambra State Command, or personnel of the Nigerian Navy Command or SARS solely or substantially because of DECEDENT 3's Igbo ethnicity on May 30,

2016, in Orumba North Local Government Area of Anambra State.  On the deathbed and before DECEDENT 3 died, DECEDENT 3 related to Plaintiff DOE 3 that DECEDENT 3's killers stated that their Commander-in-Chief, Nigerian President Muhammadu Buhari, will be very happy to hear the good news that "*these infidel Biafrans have been killed in droves like fowls.*"

111.    DECEDENT 3 was killed extrajudicially killing by or at the hands of Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO under color of Nigerian law.

112.    Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO knew or had reason to know before the fact that the Nigerian soldiers, joined by personnel of the Anambra State Police Force, Anambra State Command, or personnel of the Nigerian Navy Command or SARS would murder DECEDENT 3 because of DECEDENT 3's ethnicity and political views but did nothing to stop the extrajudicial killing; and, Defendants knew or had reason to know the identities of the soldier-perpetrators of the extrajudicial killing of DECEDENT 3, and are complicit in doing nothing to punish the wrongdoers.

113.    Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents acting under their direction, control or behest, murdered DECEDENT 3 in an extrajudicial killing under the color of Nigerian Law on or about May 30, 2016, in Anambra State, Nigeria solely or substantially because of DECEDENT 3's ethnicity and political views.

114.    Seeking a remedy for the extrajudicial killing of DECEDENT 3 in Nigeria would be futile because the Nigerian judicial system has been politically compromised by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and their political agents against IPOB/Igbo claimants, such that Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO will not and have not been brought to justice.

115.    In fact, Plaintiff DOE 3 risks certain death by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO, and those whom they command, if a complaint is brought in Nigeria seeking a remedy for the murder, extrajudicial killing, and torture of DECEDENT 3.

116.    The extrajudicial killing of DECEDENT 3 under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents acting under their direction, control or behest have violated the Alien Tort Claims Act and Torture Victims Protection Act of 1991, Pub. L. 102-256, 106 Stat. 73 (March 12, 1992) ("TVPA") and 28 U.S.C. § 1350.

117.    The extra-judicial killing of DECEDENT 3 under the color of Nigerian law by Defendants and other unknown agents acting under their direction, control or behest have directly or proximately caused cognizable damages to Plaintiff DOE 3 in an amount not less than FIVE MILLION DOLLARS (U.S.) ($5,000,000.00).

118.    The extra-judicial killing of DECEDENT 3 under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents was a deliberate, willful, intentional, wanton, malicious, and oppressive act and should be punished by an award of punitive damages in an amount not less than FIFTEEN MILLION DOLLARS (U.S.) ($15,000,000.00), or as otherwise determined at trial.

119.    Plaintiff DOE 3 has engaged the undersigned attorneys to prosecute this Torture Victims Protection Act claim on Plaintiff's behalf and has agreed to pay them a reasonable attorneys' fee for which amounts Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO should be liable.

### COUNT IV – TORTURE VICTIMS PROTECTION ACT OF 1991 VIOLATION AGAINST LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO: DOE 4

120.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 - 78, above, as if fully set forth herein.

121.    Plaintiff DOE 4 is the legal representative of DECEDENT 4, the victim of an extrajudicial killing under color of Nigerian law perpetrated by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO.

122.    DECEDENT 4 was shot twice at close range at the scene of the Biafra/Igbo Heroes Day Anniversary event along Umujoi Road at Nkpor, Anambra State and killed by Nigerian soldiers, or by personnel of the Anambra State Police Force, Anambra State Command, or personnel of the Nigerian Navy Command or SARS,  all under the command, control or acting at the behest of

Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO on May 30, 2016, solely or substantially because of the Igbo ethnicity and pro-Biafran political beliefs of DECEDENT 4.

123.    Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO knew or had reason to know before the fact that the Nigerian soldiers, joined by personnel of the Anambra State Police Force, Anambra State Command, or personnel of the Nigerian Navy Command or SARS would murder DECEDENT 4 because of DECEDENT 4's race and political views but did nothing to stop the extrajudicial killing; and, Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO knew or had reason to know the identities of the soldier-perpetrators of the extrajudicial killing of DECEDENT 4, and are complicit and have done nothing to punish the wrongdoers.

124.    Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents acting under their direction, control or behest murdered DECEDENT 4 in an extrajudicial killing under the color of Nigerian Law on or about May 30, 2016, in Anambra State, Nigeria solely because of DECEDENT 4's ethnicity and political views.

125.    Seeking a remedy for the extrajudicial killing of DECEDENT 4 in Nigeria would be futile because the Nigerian judicial system has been politically compromised by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and their

political agents against IPOB/Igbo claimants, such that Defendants will not and have not been brought to justice.

126.   In fact, Plaintiff DOE 4 risks certain death by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and those whom they command if a complaint is brought in Nigeria seeking a remedy for the murder and torture of DECEDENT 4.

127.   The extrajudicial killing of DECEDENT 4 under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents acting under their direction, control or behest have violated the Alien Tort Claims Act and Torture Victims Protection Act of 1991, Pub. L. 102-256, 106 Stat. 73 (March 12, 1992) ("TVPA") and 28 U.S.C. § 1350.

128.   The extra-judicial killing of DECEDENT 4 under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents acting under their direction, control or behest have directly or proximately caused cognizable damages to Plaintiff DOE 4 in an amount not less than FIVE MILLION DOLLARS (U.S.) ($5,000,000.00).

129.   The extra-judicial killing of DECEDENT 4 under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents was a deliberate, willful, intentional, wanton, malicious,

and oppressive act and should be punished by an award of punitive damages in an amount not less

than FIFTEEN MILLION DOLLARS (U.S.) ($15,000,000.00), or as otherwise determined at trial.

130.    Plaintiff DOE 4 has engaged the undersigned attorneys to prosecute this Torture Victims

Protection Act claim on Plaintiff's behalf and has agreed to pay them a reasonable attorneys' fee

for which amounts Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL

ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR,

KARMA, ABANG and KOKOMO should be liable.

### COUNT V – TORTURE VICTIMS PROTECTION ACT OF 1991 VIOLATION AGAINST LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO: DOE 5

131.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 - 78, above, as if fully

set forth herein.

132.    Plaintiff DOE 5 is the legal representative of his deceased brother, DECEDENT 5, the

victim of an extrajudicial killing under color of Nigerian law perpetrated by Defendants.

133.    DECEDENT 5 was shot and killed by Nigerian soldiers, or by personnel of the Anambra

State Police Force, Anambra State Command, or personnel of the Nigerian Navy Command or the

Special Anti-Robbery Squad (SARS) on May 30, 2016 at the Biafra/Heroes Day Anniversary

event at Nkor, Anambra State because of DECEDENT 5's Igbo race or pro-Biafra political views.

134.    Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU,

COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG

and KOKOMO, knew or had reason to know before the fact that the Nigerian soldiers, or personnel

of the Anambra State Police Force, Anambra State Command, or personnel of the Nigerian Navy

Command or SARS would murder DECEDENT 5 because of DECEDENT 5's race and political

views but did nothing to stop the extrajudicial killing; and, Defendants knew or had reason to know

the identities of the soldier/sailor/police force/SARS perpetrators of the extrajudicial killing of DECEDENT 5, and are complicit and have done nothing to punish the wrongdoers.

135.    Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents acting under their direction, control or behest murdered DECEDENT 5 under the color of Nigerian Law on or about May 30, 2016, in Anambra State, Nigeria solely because of DECEDENT 5's ethnicity and political views.

136.    Seeking a remedy for the extrajudicial killing of DECEDENT 5 in Nigeria would be futile because the Nigerian judicial system has been politically compromised by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and their political agents against IPOB/Igbo claimants, such that Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO will not be and have not been brought to justice.

137.    In fact, Plaintiff DOE 5 risks certain death by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO, and those whom they command, if a complaint is brought in Nigeria seeking a remedy for the murder and torture of DECEDENT 5.

138.    The extrajudicial killing of DECEDENT 5 by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents acting under their direction, control, or behest, have violated the Alien Torts Claim Act and Torture Victims

Protection Act of 1991, Pub. L. 102-256, 106 Stat. 73 (March 12, 1992) ("TVPA") and 28 U.S.C. § 1350.

139.    The extra-judicial killing of DECEDENT 5 under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents acting under their direction, control or behest have directly or proximately caused cognizable damages to Plaintiff DOE 5 in an amount not less than FIVE MILLION DOLLARS (U.S.) ($5,000,000.00).

140.    The extra-judicial killing of DECEDENT 5 under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents was a deliberate, willful, intentional, wanton, malicious, and oppressive act and should be punished by an award of punitive damages in an amount not less than FIFTEEN MILLION DOLLARS (U.S.) ($15,000,000.00), or as otherwise determined at trial.

141.    Plaintiff DOE 5 has engaged the undersigned attorneys to prosecute this Torture Victims Protection Act claim on Plaintiff's behalf and has agreed to pay them a reasonable attorneys' fee for which amounts Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO should be liable.

### COUNT VI – TORTURE VICTIMS PROTECTION ACT OF 1991 VIOLATION AGAINST LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA: DOE 6

142.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 - 78, above, as if fully set forth herein.

143.    Plaintiff DOE 6 is the legal representative of DECEDENT 6, who was the victim of an extrajudicial killing under color of Nigerian law perpetrated by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IIDRIS, HOSEA IKPEAZU, and NWAGARA.  Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA selected DECEDENT 6 for extrajudicial killing under color of Nigerian law solely or substantially because of DECEDENT 6's Igbo ethnicity and pro-Biafran political views.

144.    On or about February 9, 2016, during prayers at the private observation and peaceful protest of the continued imprisonment of Biafran leader Nmandi Kanu, soldiers or personnel of the Abia State Police Force, Abia State Command, or personnel of the Nigerian Navy Command, the SSS or SARS, under the command responsibility of Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS,  HOSEA, IKPEAZU, and NWAGARA stormed the National High School Compound in Aba and murdered DECEDENT 6 under color of Nigerian law.

145.    Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS,  HOSEA, IKPEAZU, and NWAGARA knew or had reason to know before the fact that the or personnel of the Abia State Police Force, Abia State Command, or personnel of the Nigerian Navy Command, the SSS or SARS, would kill DECEDENT 6 because of his Igbo ethnicity and pro-Biafran political views, but did nothing to stop the extrajudicial murder, and Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS,  HOSEA, IKPEAZU, and NWAGARA knew or had reason to know after the fact the identities of the soldier or police culprits, and are complicit and have since done nothing to bring them to justice.

146.    Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS,  HOSEA, IKPEAZU, and NWAGARA knew or had reason to know before the fact that the Nigerian soldiers or personnel of the Abia State Police Force, Abia State Command, or personnel of the Nigerian Navy Command or SARS, would murder DECEDENT 6 because of his ethnicity and political views but did nothing to stop the extrajudicial killing; and, Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS,  HOSEA, IKPEAZU, and NWAGARA knew or had reason to know the identities of the soldier-perpetrators of the extrajudicial killing of DECEDENT 6, and are complicit and have done nothing to punish the wrongdoers.

147.    Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA and other unknown agents acting under their direction, control or behest murdered DECEDENT 6 under the color of Nigerian Law on or about February 9, 2016, in Abia State, Nigeria solely because of DECEDENT 6's ethnicity and political views.

148.    Seeking a remedy for the extrajudicial killing of DECEDENT 6 in Nigeria would be futile because the Nigerian judicial system has been politically compromised by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS,  HOSEA, IKPEAZU, and NWAGARA and their political agents against IPOB/Igbo claimants, such that Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS,  HOSEA, IKPEAZU, and NWAGARA will not and have not been brought to justice.

149.    In fact, Plaintiff DOE 6 risks certain death by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS, HOSEA,

IKPEAZU, and NWAGARA and those whom they command if a complaint is brought in Nigeria seeking a remedy for the murder and torture of DECEDENT 6.

150.    The extrajudicial killing of DECEDENT 6 under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IIDRIS, HOSEA IKPEAZU, and NWAGARA and other unknown agents acting under their direction, control or behest have violated the Alien Tort Claims Act and Torture Victims Protection Act of 1991, Pub. L. 102-256, 106 Stat. 73 (March 12, 1992) ("TVPA") and 28 U.S.C. § 1350.

151.    The extra-judicial killing of DECEDENT 6 under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IIDRIS, HOSEA IKPEAZU, and NWAGARA and other unknown agents acting under their direction, control or behest have directly or proximately caused cognizable damages to Plaintiff DOE 6 in an amount not less than FIVE MILLION DOLLARS (U.S.) ($5,000,000.00).

152.    The extra-judicial killing under the color of Nigerian law of DECEDENT 6 by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IIDRIS, HOSEA IKPEAZU, and NWAGARA and other unknown agents was a deliberate, willful, intentional, wanton, malicious, and oppressive act and should be punished by an award of punitive damages in an amount not less than FIFTEEN MILLION DOLLARS (U.S.) ($15,000,000.00), or as otherwise determined at trial.

153.    Plaintiff DOE 6 has engaged the undersigned attorneys to prosecute this Torture Victims Protection Act claim on Plaintiff's behalf and has agreed to pay them a reasonable attorneys' fee for which amounts Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, COLONEL ABDULLAHI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA should be liable.

**COUNT VII – TORTURE VICTIMS PROTECTION ACT OF 1991 VIOLATION
AGAINST LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU,
COLONEL SIDI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA: DOE 7**

154.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 - 78, above, as if fully set forth herein.

155.    Plaintiff DOE 7 is the legal representative of DECEDENT 7, the victim of an extrajudicial killing under color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA.

156.    Nigerian soldiers of the 144th Battalion and/or personnel of the Abia State Police Force, Abia State Command, and/or personnel of the Nigerian Navy Command, the SSS and/or SARS, under the supervisory control of Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS,  HOSEA, IKPEAZU, and NWAGARA shot and killed DECEDENT 7 on February 9, 2016, during prayers at the private observation and peaceful protest of the continued imprisonment of Biafran leader Nmandi Kanu, at the National High School in Aba, Abia State.

157.    The motivation of Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA for the extrajudicial killing of DECEDENT 7 was solely or substantially because of the Igbo ethnicity and personal pro-Biafran political viewpoints of DECEDENT 7.

158.    Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS,  HOSEA, IKPEAZU, and NWAGARA knew or had reason to know before the fact that the 144th Battalion soldiers or personnel of the Abia State Police Force, Abia State Command, or personnel of the Nigerian Navy Command, the SSS and/or SARS, would

kill DECEDENT 7, because of DECEDENT 7's ethnicity and political views, but did nothing to stop the extrajudicial murder, and Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS,  HOSEA, IKPEAZU, and NWAGARA knew or had reason to know after the fact the identifies of the soldier culprits, and did nothing to bring them to justice.

159.    Seeking a remedy for the extrajudicial killing of DECEDENT 7, in Nigeria would be futile because the Nigerian judicial system has been politically compromised by Defendants and their political agents against IPOB/Igbo claimants, such that Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA will not and have not been brought to justice.

160.    In fact, Plaintiff DOE 7 risks certain death by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA and those whom they command if a Complaint is brought in Nigeria seeking a remedy for the murder and torture of DECEDENT 7.

161.    The extrajudicial killing of DECEDENT 7, under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA and other unknown agents acting under their direction, control or behest have violated the Alien Tort Claims Act and Torture Victims Protection Act of 1991, Pub. L. 102-256, 106 Stat. 73 (March 12, 1992) ("TVPA") and 28 U.S.C. § 1350.

162.    The extra-judicial killing under the color of Nigerian law of DECEDENT 7 by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA and other unknown agents acting under their

direction, control or behest have directly or proximately caused cognizable damages to Plaintiff DOE 7 in an amount not less than FIVE MILLION DOLLARS (U.S.) ($5,000,000.00).

163.    The extra-judicial killing of DECEDENT 7, under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, COLONEL ABDULLAHI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA and other unknown agents was a deliberate, willful, intentional, wanton, malicious, and oppressive act and should be punished by an award of punitive damages in an amount not less than FIFTEEN MILLION DOLLARS (U.S.) ($15,000,000.00), or as otherwise determined at trial.

164.    Plaintiff DOE 7 has engaged the undersigned attorneys to prosecute this Torture Victims Protection Act claim on Plaintiff's behalf and has agreed to pay them a reasonable attorneys' fee for which amounts Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, COLONEL ABDULLAHI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA should be liable.

**COUNT VIII – TORTURE VICTIMS PROTECTION ACT OF 1991 VIOLATION AGAINST LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, COLONEL ABDULLAHI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA: DOE 8**

165.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 - 78, above, as if fully set forth herein.

166.    Plaintiff DOE 7 is the legal representative of her deceased brother, DECEDENT 8, victim of an extrajudicial killing under color of Nigerian law perpetrated by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, COLONEL ABDULLAHI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA.

167.    Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA held supervisory power

over the Nigerian military personnel, and/or Nigerian soldiers of the 144th Battalion and/or personnel of the Abia State Police Force, Abia State Command, and/or personnel of the Nigerian Navy Command, the SSS and/or SARS, that shot and killed DECEDENT 8 by shooting him, on or about February 9, 2016, near the National High School premises in Aba during the private observation and peaceful protest of the continued imprisonment of Biafran leader Nmandi Kanu.

168.    The motivation of Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, COLONEL ABDULLAHI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA for their extrajudicial killing of DECEDENT 8 was solely or substantially because of DECEDENT 8's Igbo ethnicity, IPOB membership and pro-Biafran political viewpoints.

169.    Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS,  HOSEA, IKPEAZU, and NWAGARA knew or had reason to know before the fact that Nigerian soldiers of the 144th Battalion and/or personnel of the Abia State Police Force, Abia State Command, and/or personnel of the Nigerian Navy Command, the SSS and/or SARS, would kill DECEDENT 8 because of DECEDENT 8's ethnicity and political views, but did nothing to stop the extrajudicial murder, and Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA knew or had reason to know after the fact the identities of the murderous and genocidal culprits, and did nothing to bring them to justice.

170.    Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, COLONEL ABDULLAHI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA and other unknown agents acting under their direction, control or behest murdered

DECEDENT 8 under the color of Nigerian Law on or about February 9, 2016, in Abia State, Nigeria solely because of DECEDENT 8 ethnicity and political views.

171.    Seeking a remedy for the extrajudicial killing of DECEDENT 8 in Nigeria would be futile because the Nigerian judicial system has been politically compromised by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS,  HOSEA, IKPEAZU, and NWAGARA and their political agents against IPOB/Igbo claimants, such that Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS,  HOSEA, IKPEAZU, and NWAGARA will not and have not been brought to justice.

172.    In fact, Plaintiff DOE 7 risks certain death by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, COLONEL ABDULLAHI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA and those whom they command if a Complaint is brought in Nigeria seeking a remedy for the murder and torture of DECEDENT 8.

173.    The extrajudicial killing of DECEDENT 8 under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA and other unknown agents acting under their direction, control or behest have violated the Alien Tort Claims Act and Torture Victims Protection Act of 1991, Pub. L. 102-256, 106 Stat. 73 (March 12, 1992) ("TVPA") and 28 U.S.C. § 1350.

174.    The extra-judicial killing under the color of Nigerian law of DECEDENT 8 by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, COLONEL ABDULLAHI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA and other unknown agents acting under their direction, control or behest have directly or proximately caused

cognizable damages to Plaintiff DOE 7 in an amount not less than FIVE MILLION DOLLARS (U.S.) ($5,000,000.00).

175.    The extra-judicial killing of DECEDENT 8 under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA and other unknown agents was a deliberate, willful, intentional, wanton, malicious, and oppressive act and should be punished by an award of punitive damages in an amount not less than FIFTEEN MILLION DOLLARS (U.S.) ($15,000,000.00), or as otherwise determined at trial.

176.    Plaintiff DOE 7 has engaged the undersigned attorneys to prosecute this Torture Victims Protection Act claim on Plaintiff's behalf and has agreed to pay them a reasonable attorneys' fee for which amounts Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA should be liable.

### COUNT IX – TORTURE VICTIMS PROTECTION ACT OF 1991 VIOLATION AGAINST LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, COLONEL ABDULLAHI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA: DOE 9

177.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 - 78, above, as if fully set forth herein.

178.    Plaintiff DOE 9 is the legal representative of DECEDENT 9, the victim of an extrajudicial killing by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, COLONEL ABDULLAHI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA under color of Nigerian law.

179.    DECEDENT 9 was killed by Nigerian soldiers or personnel of the Abia State Police Force, Abia State Command, or personnel of the Nigerian Navy Command, the SSS or SARS, under the

command responsibility, control, and supervisory authority of Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA by gunshot on January 18, 2016, when live rounds of ammunition were fired into the private observation and peaceful protest of the continued imprisonment of Biafran leader Nmandi Kanu, at the National High School in Aba, Abia State specifically because of his Igbo ethnicity and pro-Biafran political viewpoints.

180.   Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA knew or had reason to know before the fact that the soldiers or personnel of the Abia State Police Force, Abia State Command, or personnel of the Nigerian Navy Command, the SSS or SARS, would kill DECEDENT 9 because of his ethnicity and political views, but did nothing to stop the extrajudicial murder, and Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA knew or had reason to know after the fact the identifies of the soldier culprits, and did nothing to bring them to justice.

181.   Seeking a remedy for the extrajudicial killing of DECEDENT 9 in Nigeria would be futile because the Nigerian judicial system has been politically compromised by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA and their political agents against IPOB/Igbo claimants, such that Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA will not and have not been brought to justice.

182.   In fact, Plaintiff DOE 9 risks certain death by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, COLONEL ABDULLAHI, ARASE,

IDRIS, HOSEA, IKPEAZU, and NWAGARA and those whom they command if a complaint is brought in Nigeria seeking a remedy for the murder and torture of DECEDENT 9.

183.   The extrajudicial killing of DECEDENT 9 under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, COLONEL ABDULLAHI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA and other unknown agents acting under their direction, control or behest have violated the Alien Tort Claims Act and Torture Victims Protection Act of 1991, Pub. L. 102-256, 106 Stat. 73 (March 12, 1992) ("TVPA") and 28 U.S.C. § 1350.

184.   The extra-judicial killing under the color of Nigerian law of DECEDENT 9 by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, COLONEL ABDULLAHI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA and other unknown agents acting under their direction, control or behest have directly or proximately caused cognizable damages to Plaintiff DOE 9 in an amount not less than FIVE MILLION DOLLARS (U.S.) ($5,000,000.00).

185.   The extra-judicial killing of DECEDENT 9 under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL SIDI, COLONEL ABDULLAHI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA and other unknown agents was a deliberate, willful, intentional, wanton, malicious, and oppressive act and should be punished by an award of punitive damages in an amount not less than FIFTEEN MILLION DOLLARS (U.S.) ($15,000,000.00), or as otherwise determined at trial.

186.   Plaintiff DOE 9 has engaged the undersigned attorneys to prosecute this Torture Victims Protection Act claim on Plaintiff's behalf and has agreed to pay them a reasonable attorneys' fee for which amounts Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL

ATTAHIRU, COLONEL SIDI, COLONEL ABDULLAHI, ARASE, IDRIS, HOSEA, IKPEAZU, and NWAGARA should be liable.

**COUNT X – TORTURE VICTIMS PROTECTION ACT OF 1991 VIOLATION AGAINST LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO: DOE 10**

187.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 - 78, above, as if fully set forth herein.

188.    Plaintiff DOE 10 was tortured under color of Nigerian law by Nigerian soldiers , or personnel of the Anambra State Police Force, Anambra State Command, or personnel of the Nigerian Navy Command or by the Special Anti-Robbery Squad (SARS) under the command, control and supervision of Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO, solely or substantially because of his Igbo ethnicity and attendance at the May 30, 2016, Biafra/Igbo Heroes Day Anniversary event at Nkpor, Anambra State.

189.    Plaintiff DOE 10 was brutally tortured with daggers; bashed repeatedly with gun-butts; mercilessly stomped with military boots and lashed with belts after his detention along with others on or about May 30, 2016 by persons under the command, control, or supervision of Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO.

190.    The torture of Plaintiff DOE 10 included, but was not limited to, repeated stabbings and beatings by members of the Nigerian armed forces and SARS under the command, control, or supervision of Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU,

COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO.

191.    Defendants' LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO sole or substantial motivation for torturing Plaintiff DOE 10 was his Igbo race and pro-Biafran political viewpoints.

192.    Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO knew or had reason to know before the fact that the Nigerian armed forces or SARS would torture Mr. DOE 10 because of his race and political views but did nothing to stop the torture; and, Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO knew or had reason to know the identities of the soldier/sailor/SARS perpetrators of the torture of Mr. DOE 10, and are complicit and have done nothing to punish the wrongdoers.

193.    Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents acting under their direction, control, or behest tortured Plaintiff DOE 10 under the color of Nigerian Law on or about May 30, 2016, and continuing thereafter for numerous days while detained in Anambra State, Nigeria solely because of his ethnicity and political views.

194.    Seeking a remedy for the extrajudicial torture of Plaintiff DOE 10 in Nigeria would be futile because the Nigerian judicial system has been politically compromised by Defendants LT.

GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and their political agents against IPOB/Igbo claimants, such that Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO will not be and have not been brought to justice.

195.     In fact, Plaintiff DOE 10 risks certain death by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and those whom they command if a complaint is brought in Nigeria seeking a remedy for his brutal and inhumane torture at the hands of Defendants and other unknown agents acting under their direction, control, or behest.

196.     The torture of Plaintiff DOE 10 under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents acting under their direction, control or behest have violated the Alien Tort Claims Act and Torture Victims Protection Act of 1991, Pub. L. 102-256, 106 Stat. 73 (March 12, 1992) ("TVPA") and 28 U.S.C. § 1350.

197.     The torture of Plaintiff DOE 10 under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents acting under their direction, control or behest have directly or proximately caused cognizable damages to Plaintiff DOE 10 in an amount not less than THREE MILLION DOLLARS (U.S.) ($3,000,000.00).

198.     The torture of Plaintiff DOE 10 under the color of Nigerian law by Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO and other unknown agents was a deliberate, willful, intentional, wanton, malicious, and oppressive act and should be punished by an award of punitive damages in an amount not less than THREE MILLION DOLLARS (U.S.) ($3,000,000.00), or as otherwise determined at trial.

199.     Plaintiff DOE 10 has engaged the undersigned attorneys to prosecute this Torture Victims Protection Act claim on Plaintiff's behalf and has agreed to pay them a reasonable attorneys' fee for which amounts Defendants LT. GENERAL BURATAI, DAURA, MAJ. GENERAL ATTAHIRU, COLONEL ABDULLAHI, ARASE, IDRIS, OBIANO, KARMA, NWAFOR, KARMA, ABANG and KOKOMO should be liable.

## COUNT XI – CRIMES AGAINST HUMANITY UNDER 28 U.S.C. §1350 AGAINST ALL DEFENDANTS: ALL PLAINTIFFS

200.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 – 199, above, as if fully set forth herein.

201.     The acts of torture against Plaintiff DOE 10 and Decedents: DECEDENT 1, DECEDENT 2, DECEDENT 3, DECEDENT 4, DECEDENT 5, DECEDENT 6, DECEDENT 7, DECEDENT 8 and DECEDENT 9 by persons under the command, control or supervision of Defendants were committed as part of a widespread or systematic, pre-planned and tactical attack against a civilian population and was based upon the ethnicity and political beliefs of that civilian population.  The acts constitute "tort[s] …committed in violation of the laws of nations or a treaty of the United States" under the Alien Tort Statute, 28 U.S.C. §1350, in that they were in violation of customary international law prohibiting crimes against humanity as reflected, expressed, defined, and

codified in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

202.     Defendants jointly and severally engaged in a joint criminal enterprise with, conspired with, and/or aided and abetted other police officers, soldiers and sailors in the Nigerian Armed Forces and the Nigerian Police Force, the SSS, and vigilante/militia security cadres, such as SARS, who carried out the planned mental, physical and emotional torture against each Plaintiff to commit crimes against humanity solely or substantially because of Plaintiff DOE 10's and each Decedent's Igbo ethnicity and political beliefs.

203.     As a result of these crimes against humanity, Plaintiffs, in their individual capacities or as legal representatives of the Decedents, are entitled to damages in an amount to be determined at trial.

204.     Defendants acts or omissions were deliberate, willful, intentional, wanton, malicious and oppressive, and should be punished by an award of punitive damages in an amount to be determined at trial.

205.     The genocidal torture of Plaintiff DOE 10 and of Decedents: DECEDENT 1, DECEDENT 2, DECEDENT 3, DECEDENT 4, DECEDENT 5, DECEDENT 6, DECEDENT 7, DECEDENT 8 and DECEDENT 9 were each done under the color of Nigerian law by Defendants and other unknown agents acting under their direction, control or behest and constitute crimes against humanity and have violated the Alien Tort Statute, 28 U.S.C. §1350.

206.     The torture under the color of Nigerian law of Plaintiff DOE 10 and Decedents: DECEDENT 1, DECEDENT 2, DECEDENT 3, DECEDENT 4, DECEDENT 5, DECEDENT 6, DECEDENT 7, DECEDENT 8 and DECEDENT 9 by Defendants and other unknown agents acting under their direction, control or behest have directly or proximately caused cognizable

damages to each Plaintiff in an amount not less than ONE MILLION DOLLARS (U.S.) ($1,000,000.00).

207.    The genocidal torture of Plaintiff DOE 10 and of each Decedent under the color of Nigerian law by Defendants and other unknown agents was a deliberate, willful, intentional, wanton, malicious, and oppressive act and should be punished by an award of punitive damages to each Plaintiff in an amount not less than THREE MILLION DOLLARS (U.S.) ($3,000,000.00), or as otherwise determined at trial.

208.    Plaintiffs have engaged the undersigned attorneys to prosecute this Alien Tort Claims Act claim on their behalves and have agreed to pay them a reasonable attorneys' fee for which amounts Defendants should be liable.

## COUNT XII – CRIMES AGAINST HUMANITY UNDER 28 U.S.C. §1350 AGAINST ALL DEFENDANTS: PLAINTIFF'S DECEDENTS 1- 9

209.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 – 199, above, as if fully set forth herein.

210.    The killings and torture of DECEDENT 1, DECEDENT 2, DECEDENT 3, DECEDENT 4, DECEDENT 5, DECEDENT 6, DECEDENT 7, DECEDENT 8, and DECEDENT 9 were all committed as part of a widespread or systematic attack against a civilian population.  They constituted torture under the Torture Victims Protection Act, as well as actionable "tort[s] …committed in violation of the laws of nations or a treaty of the United States" under the Alien Tort Statute, 28 U.S.C. §1350, in that each killing was motivated by ethnic or political  hatred against a civilian population and therefore are plainly in violation of customary international law prohibiting crimes against humanity as reflected, expressed, defined, and codified in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

211.    Defendants jointly and severally engaged in a joint criminal enterprise with, conspired with, and/or aided and abetted other police officers, soldiers and sailors in the Nigerian Armed Forces and the Nigerian Police Force, the SSS and vigilante/militia security cadres, such as SARS, who carried out the planned mental, physical and emotional torture and killing of each Decedent to commit crimes against humanity solely or substantially because of each Decedent's Igbo ethnicity, IPOB membership, and political beliefs.

212.    Plaintiffs are each entitled to damages in an amount to be determined at trial.

213.    Defendants' acts or omissions were deliberate, willful, intentional, wanton, malicious and oppressive, and should be punished by an award of punitive damages in an amount to be determined at trial.

214.    The torture and extra-judicial killing of each Decedent was done under the color of Nigerian law by Defendants and other unknown agents acting under their direction, control or behest and constitute crimes against humanity in violation of the Torture Victims Protection Act, 28 U.S.C. §1350.

215.    The torture and killing under the color of Nigerian law of Decedents: DECEDENT 1, DECEDENT 2, DECEDENT 3, DECEDENT 4, DECEDENT 5, DECEDENT 6, DECEDENT 7, DECEDENT 8 and DECEDENT 9 by Defendants and other unknown agents acting under their direction, control or behest have directly or proximately caused cognizable damages to each Plaintiff in an amount not less than FIVE MILLION DOLLARS (U.S.) ($5,000,000.00).

216.    The torture and killing of each Decedent under the color of Nigerian law by Defendants and other unknown agents was a deliberate, willful, intentional, wanton, malicious, and oppressive act and should be punished by an award of punitive damages to each Plaintiff in an amount not

less than FIFTEEN MILLION DOLLARS (U.S.) ($15,000,000.00), or as otherwise determined at trial.

217.   Plaintiffs have engaged the undersigned attorneys to prosecute this Torture Victims Protection Act claim on their behalves and have agreed to pay them a reasonable attorneys' fee for which amounts Defendants should be liable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues to which he is so entitled.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests this Court provide an Order for the following relief:

(1)      That the Court determine and enter judgment declaring that the acts and omissions of the Defendants, as set forth above, violate the Torture Victims Protection Act of 1991, Pub. L. 102-256, 106 Stat. 73 (March 12, 1992) and 28 U.S.C. § 1350;

(2)      That the Court also determine and enter judgment declaring that the acts and omissions of the Defendants, as set forth above, constitute crimes against humanity under the Alien Tort Statute, 28 U.S.C. §1350.

(3)      Award each Plaintiff compensatory damages, jointly and severally, as to each Defendant, in an amount to be determined at trial;

(4)      Award each Plaintiff punitive damages, jointly and severally, as to each Defendant;

(5)      Grant each Plaintiff an award of attorney fees and legal costs reasonably incurred in this action, and otherwise;

(6)     Grant each Plaintiff such other and further relief which the Court deems just and proper.

Respectfully submitted this 30th day of May 2017.


*s/ Bruce Fein*
Bruce Fein, Esquire
W. Bruce DelValle, Esquire
*Pro Hac Vice Application Pending*
Fein & DelValle PLLC
300 New Jersey Avenue NW, Suite 900
Washington, D.C. 20001
(office) 202-465-8727
*Email:  bruce@feinpoints.com*
        *brucedelvalle@gmail.com*

**Counsel for Plaintiffs.**