# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DOE 1, *et al.*,<br><br>       *Plaintiffs*,<br><br>    v.<br><br>TUKUR YUSUF BURATAI, *et al.*,<br><br>       *Defendants*. | No. 17-cv-1033 (DLF) |

## MEMORANDUM OPINION AND ORDER

The plaintiffs are Nigerian nationals who allege that the defendants—officials in the Nigerian government, military, and police—brutally tortured and killed peaceful protesters. The Court granted the defendants' motions to dismiss on July 19, 2018. *See* Order July 19, 2018, Dkt. 46; Mem. Op., Dkt. 47. Before the Court is the plaintiffs' Motion to Alter or Amend Final Judgment of Dismissal pursuant to Federal Rule of Civil Procedure 59(e), Dkt. 48. For the reasons that follow, the Court will deny the motion.

## I. BACKGROUND

The Court previously recounted the factual background of this case in its memorandum opinion. *See* Mem. Op. at 1–7. In short, the Nigerian military and police allegedly shot and killed peaceful protesters as part of a long-running conflict between the Nigerian government and a group called the Biafrans. Compl. ¶¶ 22, 44–47, 49, 51–53, 56–60, 179. Ten plaintiffs—nine legal representatives of deceased victims and one survivor who was allegedly detained and tortured—sued sixteen individual defendants affiliated with Nigerian police and military forces. *Id.* ¶¶ 12–42, 79–199. The plaintiffs asserted claims under the Alien Tort Statute, 28 U.S.C. § 1350, and the Torture Victims Protection Act of 1991 (TVPA), Pub. L. No. 102–256, § 2(a),

106 Stat. 73, 73 (Mar. 12, 1992) (codified as a note to 28 U.S.C. § 1350). *See* Compl. ¶¶ 79–217.

In response, the Nigerian government requested that the U.S. Department of State provide a suggestion of foreign-official immunity for the defendants. Manu Decl. ¶¶ 3–5, Dkt. 36-2; *see also* Dkt. 41-1 at 7–10. The State Department did not act on that request before the Court's decision on July 19, 2018, Mem. Op. at 16–17, and it still has not filed a suggestion of immunity, a suggestion of non-immunity, or any other document with the Court.

The defendants filed two motions to dismiss—one by Willie Obiano and another by Anthony O. Egbase purportedly acting on behalf of all defendants. *See* Dkts. 35, 36. The Court granted both motions on July 19, 2018, holding that it lacked personal jurisdiction over the defendants and that the defendants were entitled to foreign-official immunity. *See* Order July 19, 2018; Mem. Op. at 9–15.

## II. LEGAL STANDARD

Reconsideration under Rule 59(e) is an "extraordinary measure." *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018). Because "Rule 59(e) motions are aimed at reconsideration, not initial consideration," they "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Id.* (internal quotations omitted); *see also New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995) (per curiam) ("A Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled."). Although "the court has considerable discretion in ruling on a Rule 59(e) motion," it may grant such a motion "under three circumstances only: (1) if there is an intervening change of controlling law; (2) if new evidence becomes available; or (3) if the judgment should be amended in order to correct a clear

error or prevent manifest injustice." *Leidos, Inc.,* 881 F.3d at 217 (internal quotation marks omitted). "Manifest injustice" in turn "requires at least (1) a clear and certain prejudice to the moving party that (2) is fundamentally unfair in light of governing law." *Id.* (alteration and internal quotation marks omitted).

## III. ANALYSIS

The plaintiffs point to no intervening change of controlling law or new evidence to support their motion. *See* Pls.' Rule 59(e) Mot. to Alter or Am. Final J. of Dismissal, Dkt. 48. Instead, they raise a series of objections to the Court's legal analysis in an effort to show clear error and manifest injustice. *Id.* at 5–14. Their objections are unpersuasive.

### A. Foreign-Official Immunity

The plaintiffs first fault the Court for considering the State Department's views in determining whether the Nigerian defendants are entitled to foreign-official immunity. *See id.* at 5–6. It is unclear whether the plaintiffs mean to challenge the Court's threshold finding of immunity, *see* Mem. Op. at 15–21, or its further holding that no exception to that immunity applies, *see* Mem. Op. at 26–30. To the extent the plaintiffs object to the Court's threshold finding of immunity, their objection is foreclosed by Supreme Court precedent, which requires district courts to consider the views of the State Department not once but *twice* in determining whether common-law foreign-official immunity applies. *See Samantar v. Yousuf*, 560 U.S. 305, 324–25 (2010) (outlining a two-step process that considers (1) whether the State Department granted a defendant's request for a "suggestion of immunity"; and, if not, (2) "whether the ground of immunity is one which it is the established policy of the State Department to recognize") (alteration and internal quotation marks omitted); *see also Manoharan v. Rajapaska*, 845 F. Supp. 2d 260, 262–63 (D.D.C. 2012) (applying *Samantar*'s two-step process), *aff'd*, 711 F.3d 178 (D.C. Cir. 2013) (per curiam).

Their objection fares no better if aimed at the Court's related holding that no exception to foreign-official immunity applies. In reaching that conclusion, the Court did not formally defer to—or even critically rely on—the State Department's views. The Court made no mention of the views of the Department of State or the Executive Branch when it determined that the TVPA did not abrogate foreign-official immunity. *See* Mem. Op. at 26–29 (applying conventional tools of statutory interpretation). And in declining to recognize a freestanding *jus cogen* exception to foreign-official immunity, the Court began by considering caselaw from other Circuits, related D.C. Circuit precedent, the reasoning of other judges on this court, and the logical and policy concerns with the plaintiffs' position. *Id.* at 22–24. Only then did the Court go on to consider the fact that the Executive Branch had never recognized a *jus cogens* exception, and the "political, strategic, and legal considerations" behind that decision. *Id.* at 24–25. No principle of law, however, prohibits the Court from considering the views of the Executive Branch as persuasive, particularly in the foreign-affairs context where the Supreme Court often attaches significant weight to such views. *See Republic of Austria v. Altmann*, 541 U.S. 677, 689 (2004) ("In accordance with Chief Justice Marshall's observation that foreign sovereign immunity is a matter of grace and comity rather than a constitutional requirement, this Court has consistently deferred to the decisions of the political branches—in particular, those of the Executive Branch—on whether to take jurisdiction over particular actions against foreign sovereigns and their instrumentalities." (alteration and internal quotation marks omitted)); *see also Samantar*, 560 U.S. at 312 (requiring courts to determine "whether the ground of immunity" sought "is one which it is the established policy of the State Department to recognize") (alteration and internal quotation marks omitted); *cf. First Nat. City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 768 (1972) ("[W]here the Executive Branch, charged as it is with primary responsibility for the

conduct of foreign affairs, expressly represents to the Court that application of the act of state doctrine would not advance the interests of American foreign policy, that doctrine should not be applied by the courts.").

Once the Court's memorandum opinion is accurately read to consider, but not defer to, the views of the Executive Branch, many of the plaintiffs' remaining arguments fall away. For instance, the plaintiffs argue that leaving the scope of foreign-official immunity to the State Department violates the non-delegation doctrine, that the Court considered the views of previous State Departments when it should have focused on the views of the current State Department, and that the Court improperly consulted secondary materials by authors who lack the authority to speak for the Trump Administration.[1] Pls.' Mot. at 6–7. But all of these arguments assume—incorrectly—that the Court considered itself *bound* by the official positions of the State Department. It did not. It merely considered the informed and long-standing views of the executive branch and its lawyers—and the compelling reasons for those views—in resolving a

---

[1] On this last point, the plaintiffs complain that the Court "inexplicably relie[d] upon the musings of John B. Bellinger, III" and "manifestly err[ed] in summoning the views of Harold Hongju Koh." Pls.' Mot. at 7; *see* Mem. Op. at 25 & n.6 (citing law review articles by Bellinger and Koh, and describing the authors as "recent Legal Advisers to the State Department"). The Court notes, however, that Justice Sotomayor has had no difficulty citing Bellinger as a "former State Department Legal Adviser" for his views on "the national-security or foreign policy interests of the United States." *Trump v. Hawaii*, 138 S. Ct. 2392, 2444 (2018) (Sotomayor, J., dissenting). Likewise, the D.C. Circuit has not hesitated to cite Bellinger and Koh in the foreign-affairs context. *See, e.g.*, *Al-Bihani v. Obama*, 619 F.3d 1, 11 (D.C. Cir. 2010) (Brown, J., concurring in denial of rehearing en banc) (citing both Koh and Bellinger—who served in different administrations led by different parties—for the proposition that it is "wise" for the executive branch to consider certain "norms as a matter of sound policy, international obligation, or effective foreign relations"); *Doe v. Exxon Mobil Corp.*, 654 F.3d 11, 61 n.54 (D.C. Cir. 2011) (citing law review article by Koh and noting that the district court received expert testimony from Koh as a "former Assistant Secretary of State" and that Koh later became "Dean of the Yale Law School" and "the Legal Advisor of the State Department"), *vacated*, 527 F. App'x 7 (D.C. Cir. 2013); *Herero People's Reparations Corp. v. Deutsche Bank, A.G.*, 370 F.3d 1192, 1195 (D.C. Cir. 2004) (citing law review article by Koh).

difficult legal question. *See* Mem. Op. at 24–25 & n.6. That is not clear error, and it is certainly not clear error resulting in manifest injustice.

The plaintiffs raise a number of additional objections to the Court's reasoning. They argue that the Court incorrectly concluded that this lawsuit would "enforce a rule of law" against Nigeria, Pls.' Mot. at 7–8; minimized Congress's "purpose" in enacting the TVPA, *id.* at 8–9; exaggerated the risks of collapsing the immunity analysis with the merits, *id.* at 9–10; wrongly predicted that a contrary ruling would lead to a flood of TVPA litigation, *id.* at 10; reduced the TVPA to a nullity, *id.* at 10–11; abandoned the historical lessons that gave rise to the TVPA, *id.* at 11; invented a faulty procedure for obtaining suggestions of "non-immunity", *id.* at 11–12; and encroached on the legislative and executive branches' authority to regulate foreign affairs, *id.* at 12. But none of those arguments reveal anything more than the plaintiffs' basic disagreement with the Court's reasoning. The Court expressly considered and rejected most of the plaintiffs' arguments. *See* Mem. Op. at 20–21 (explaining why exercising jurisdiction would have the effect of enforcing a rule of law against Nigeria); *id.* at 23–24 (explaining why exercising jurisdiction would blur the immunity and merits analysis and the problems with that approach); *id.* at 28 (explaining why interpreting the TVPA to abrogate foreign-official immunity would expose foreign military officials to burdensome and uncertain litigation); *id.* at 29–30 (explaining the legal basis for allowing the Executive Branch to file suggestions of non-immunity); *id.* at 28–30 (acknowledging foreign nations' ability to immunize horrendous conduct but explaining why the Court's interpretation accords with Congressional intent and allows for recovery in an important class of cases). And the plaintiffs' other arguments would not have affected the

Court's reasoning.[2] The plaintiffs may pursue their arguments further if they choose to appeal. But a Rule 59(e) motion is not the appropriate vehicle for relitigating questions the Court has already decided. *See Leidos, Inc.*, 881 F.3d at 217. Because the Court finds no clear error or manifest injustice in its previous decision, it will not alter its ruling that foreign-official immunity attached and that no exception to immunity applies.

B. **Personal Jurisdiction**

The plaintiffs do not provide any new arguments challenging the Court's ruling on personal jurisdiction. They simply re-raise the prospect of universal jurisdiction over certain crimes against humanity and argue that such jurisdiction extends to the acts of terrorism alleged here. *Compare* Pls.' Mot. at 12–14, *with* Pls.' Opp'n to Defs.' Mot. to Dismiss at 29–34, Dkt. 39. But the Court expressly considered that argument and found it foreclosed by the Due Process Clause and D.C. Circuit precedent. Mem. Op. at 14–15. It will not disturb that conclusion based on an abbreviated version of the same arguments already presented and rejected.

---

[2] For instance, the Court's focus on the text of the TVPA, as opposed to its "purpose" or the historical atrocities that inspired it, is readily justified by the principle—now taken for granted—that "even the most formidable argument concerning the statute's purposes could not overcome the clarity . . . in the statute's text." *Nichols v. United States*, 136 S. Ct. 1113, 1119 (2016) (unanimous) (internal quotation marks omitted). The plaintiffs' only remaining argument—that the Court's holding violates the separation of powers—is particularly ironic given that the plaintiffs fault the Court for paying *too* much attention to the longstanding position of the Executive Branch and the statutory text. *Compare* Pls.' Mot. at 5–6, 8–9 (objecting to the Court's consideration of the executive branch's views and advancing arguments from statutory purpose), *with* Mem. Op. at 29 (noting that "asess[ing] the alleged misconduct" of foreign officials is "an inquiry for which the executive branch is far better-equipped than the judiciary" and that "it is not the Court's role to . . . question the policy balance struck by the Torture Victims Protection Act"). In any event, the Court did not "unilaterally confer[]" foreign-official immunity at the expense of the political branches, as the plaintiffs argue. Pls.' Mot. at 12. It merely applied the common-law framework mandated by the Supreme Court, with appropriate concern for the role of the Executive Branch and the text of the TVPA. *See* Mem. Op. at 15–30.

7

The Court acknowledges that the plaintiffs have alleged unspeakable acts of violence and oppression. However, a Rule 59(e) motion is not a blank check to relitigate every detail of a court's prior decision. To be sure, this case involves difficult legal questions on which the D.C. Circuit has not directly spoken. But despite the plaintiffs' disagreement with the Court's reasoning, they have not met their burden of showing "a clear and certain prejudice" that "is fundamentally unfair in light of governing law," *Leidos, Inc.*, 881 F.3d at 217. The Court will therefore deny their motion.

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the plaintiffs' Rule 59(e) Motion to Alter or Amend Final Judgement of Dismissal, Dkt. 48, is **DENIED**.

October 31, 2018

                                                                                    _____
                                                                                    DABNEY L. FRIEDRICH
                                                                                    United States District Judge